## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DOLL CURTIS, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 8042 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Doll Curtis has sued the City of Chicago for race discrimination (Count I) and retaliation (Count II) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as failure to accommodate (Count III) and retaliation (Count IV) in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Curtis also alleges that the City violated the Illinois Human Rights Act (IHRA), 775 Ill. Comp. Stat. 5/1 *et seq.*, for the same reasons it violated Title VII and the ADA. The City moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth herein, the City's motion to dismiss is denied.

## Factual Background[1]

Plaintiff Doll Curtis is an African-American woman who has been a City employee since approximately August, 2000. Am. Compl. ¶¶ 6, 9, ECF No. 31. In

---

[1]     The following facts are taken from Curtis's Amended Complaint and are accepted as true on review of the City's motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

2008, the City promoted Curtis to Auditor III, a senior auditing position in the City's Department of Revenue ("Department"). *Id.* In that role, Curtis's essential functions include examining accounting records, computing taxes owed by clients, and preparing detailed auditing reports. *Id.* ¶ 7.

Curtis brought a civil suit against the City—some time after her 2008 promotion—for wrongful termination, and she received a favorable settlement, including reinstatement of her employment. *Id.* ¶ 15. Curtis alleges that the suit and her subsequent vindication enraged and emboldened the City and caused it to be more strategic and systematic in discriminating against her. *Id.* Since promoting Curtis in 2008, the City has promoted no African-American employee to senior positions within the Department, *id.* ¶ 13, and, among the six employees serving in the Auditor III capacity, Curtis is the only African-American person. *Id.* ¶ 14.

After Curtis's settlement with the City, the City refused to give Curtis assignments (such as peer-reviewing auditor's files) that are required for further promotion to advanced Audit Supervisor positions, while assigning these tasks to other, similarly situated white employees. *Id.* ¶ 23. In 2014, the City also assigned Curtis time-consuming general "Tax-Audits," which took an average of eighty hours to complete, *id.* ¶ 31, while assigning her white counterparts "Discovery Audits," which took an average of ten hours to complete. *Id.* According to Curtis, the City did so as a pretext to give her lower performance evaluations as compared to white employees. *Id.* ¶ 31, 32. As a result, Curtis failed to complete the required number

of tax assignments during the July to December 2014 evaluation period. *Id.* ¶ 31. And similarly situated white employees were promoted in 2014, while Curtis was not. *Id.* ¶ 24.

Moreover, Curtis suffers from disabilities, including lower pelvic dysfunction and tendinitis of the shoulder and knee. *Id.* ¶ 9. Curtis's disabilities do not prevent her from performing the essential functions of her position, if provided with an accommodation. *Id.* On or about January 6, 2015, Curtis notified the City that she suffers from multiple disabilities, and she requested a "desk job" as a reasonable accommodation, instead of the "field job" she currently held. *Id.* ¶ 42. The field job required Curtis to carry heavy files to site locations, and her disabilities slowed her performance. *Id.* ¶ 42. The City denied Curtis's desk job accommodation request, although, Curtis asserts, it provided white Auditor IIIs with desk jobs. *Id.* ¶¶ 43–44. Because the physical difficulties of the field job depressed Curtis's performance ratings, Curtis believes that denying her request was part of the City's scheme to create a pretext for disciplining, failing to promote, and otherwise creating the conditions to terminate her. *Id.*

On January 6, 2015—on or about the same day Curtis requested an accommodation for her disabilities—Curtis filed a charge of discrimination and retaliation on the basis of race and disability with the Equal Employment Opportunity Commission (EEOC). *Id.* ¶ 18, Ex. A, 1/6/15 EEOC Charge. A few weeks later, on February 27, 2015, the City rated Curtis's performance evaluation at 2.3 out of 4 on the basis that Curtis had failed to complete the required number

of tax assessments during the July to December 2014 evaluation period. Am. Compl. ¶¶ 30–31. The low performance rating led to Curtis's loss of promotion opportunities, as well as suspensions, and placement on a Performance Improvement Plan. *Id.* ¶¶ 31, 34. As a result, Curtis filed another charge with the EEOC on August 4, 2015, alleging that after she filed her January 2015 EEOC charge, the City retaliated by giving her a poor performance evaluation and a ten-day suspension. *Id.*, Ex. B, 8/4/15 EEOC Charge.

## Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint. *Christensen v. Cty. of Boone*, 483 F.3d 454, 457 (7th Cir. 2007). The federal notice pleading standard requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2009)). A complaint need provide only "enough detail to give the City fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In evaluating a Rule 12(b)(6) motion, all well-pleaded allegations in the complaint are accepted as true, and courts must draw all reasonable inferences in the plaintiff's favor. *See Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

**Analysis**

## I.    Count I: Title VII Race Discrimination

First, Curtis alleges that the City discriminated against her on the basis of her race by denying her promotions and training opportunities that were required to obtain a promotion. Am. Compl. ¶¶ 23, 25. To state a Title VII race discrimination claim, Curtis must plausibly allege that the City instituted a specific adverse employment action against Curtis on the basis of her race. *See Tamayo*, 526 F.3d at 1084; *see also, e.g., Seung-Whan Choi v. Bd. of Tr. of Univ. of Ill.*, 2017 WL 3278823, at *5–6 (N.D. Ill. Aug. 2, 2017). "An adverse employment action is one that significantly alters the terms and conditions of the employee's job." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004).

In support of its motion to dismiss Count I, the City concedes that failure to promote Curtis would be an adverse employment action but contends that Curtis fails to allege that she had applied for a promotion (or requested the training and assignment opportunities she alleges were required to be promoted). Mot. Dismiss at 6–7, ECF No. 36. According to the City, such requests are required to state a Title VII claim based upon a failure to promote. *See id. (*citing *Shott v. Rush Univ. Med. Ctr.*, 652 F. App'x 455, 458–59 (7th Cir. 2016); *Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 991–92 (N.D. Ill. 2016)). The City also argues that Curtis has pleaded herself out of court by alleging that the City promoted her to a senior level position in 2008. Mot. Dismiss at 7.

Drawing all reasonable inferences in Curtis's favor, the Court concludes that she sufficiently alleges that she applied for a supervisory position and that she

5

sought the training and assignment opportunities required for promotion. For example, Curtis states that the City "den[ied]" her promotions in 2014, while providing promotions to similarly situated white employees, including Brian Devereux. Am. Compl. ¶¶ 22, 23. This is sufficient to create a reasonable inference that Curtis in fact sought those promotions. Similarly, Curtis alleges that the City "refused to provide Plaintiff with equal opportunities for training and assignments to advanced Audit Supervisor positions," Am. Compl. ¶ 23, from which we can reasonably infer that she sought those opportunities to become eligible for promotion to supervisory positons. And Curtis provides at least one specific example of such an opportunity—auditing the work of her peers. Am. Compl. ¶ 23. She goes on to name white employees, who received these training opportunities and the promotion that Curtis sought. *Id.* ¶ 24. These allegations are sufficient to survive the pleading stage.

The City also argues that denial of training opportunities does not qualify as an "adverse employment action" under Title VII. Mot. Dismiss at 7. But this is not Curtis's claim. Rather, she asserts that the City denied these opportunities to her as part of a concerted plan to keep her from getting promoted. Such a claim falls squarely within Title VII. *See Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) ("[A]n adverse employment action is a significant change in the claimant's employment status such as . . . denial of promotion . . . ."), *overruled on other grounds by Ortiz v. Werner, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016); *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698,

702 (7th Cir. 2001) (stating that "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" are examples of adverse employment actions); *see also Durkin v. City of Chi.*, 341 F.3d 606, 611–12 (7th Cir. 2003) ("A discriminatory denial of job-related training can constitute an adverse employment action under Title VII.").

Finally, the City's argument that Curtis has pleaded herself out of court by alleging that she was promoted to a senior level position in 2008, *see* Am. Compl. ¶ 6; Mot. Dismiss at 7, is a nonstarter. That the City promoted Curtis in 2008 does not conclusively prove that it did not discriminate against her at a later point in her career. The City's motion to dismiss Count I is accordingly denied.

## II.    Count II: Title VII Retaliation

In Count II, Curtis alleges that the City retaliated against her in violation of Title VII. To plead a Title VII retaliation claim, Curtis must allege that (1) she engaged in a protected activity under Title VII, and (2) she suffered an adverse employment action as a result of that activity. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028–29 (7th Cir. 2010) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996)).

The City argues that Curtis's Title VII retaliation claim should be dismissed because Curtis's alleged suspensions and placement on a Performance Improvement Plan are not adverse employment actions. *Id.* at 8. The City also asserts that Curtis fails to allege a causal link between the two elements. Mot. Dismiss at 8–9.

But, again, the gist of Curtis's claim is that the City failed to promote her in retaliation for her complaints of racial discrimination and that the suspensions and placement on a Performance Improvement Plan were simply part of the City's plan to deny her those promotions. Am. Compl. ¶¶ 31, 32. A retaliatory failure to promote qualifies as an adverse employment action. *See Stutler*, 263 F.3d at 703. The same is true for suspensions. *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1120 (7th Cir. 2009) ("It is undisputed that a suspension can constitute an adverse action."). As is placement on a probationary Performance Improvement Plan as a pretext to deny promotion. *See Stutler*, 263 F.3d at 703. And the same can be said for allegedly inaccurate performance evaluations that are part of an overall scheme to carry out the discriminatory plan.

The City's argument that Curtis does not sufficiently allege a causal link between a protected activity and an adverse action also fails. At the pleading stage, a plaintiff need not allege a causal link between a protected activity and an adverse employment action. *See Luevano*, 722 F.3d at 1029 (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003)).

For these reasons, the City's motion to dismiss count II is denied.

### III. Count III: ADA Failure to Accommodate

Next, the City argues that Curtis's failure-to-accommodate claim under the ADA should be dismissed because she fails to plausibly allege that the City was aware of her disability. Mot. Dismiss at 10–11. To state a failure-to-accommodate claim, the plaintiff must allege that (1) she is a qualified individual with a

disability; (2) the employer is aware of the her disability; and (3) the employer failed to reasonably accommodate the disability. *See Brumfield v. City of Chi.*, 735 F.3d 619, 631 (7th Cir. 2013) (citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)). According to the City, Curtis does not sufficiently allege that the City was aware of Curtis's disability because Curtis fails to identify the medical condition that forms the basis for her alleged request for accommodation and to allege when and from whom she requested an accommodation. Mot. Dismiss at 11. The City also argues that, to the extent Curtis's ADA claims accrued more than 300 days before she filed her January 6, 2015, charge with the EEOC, they should be dismissed as time-barred. *Id.* at 13.

But Curtis asserts that she notified the City that she suffered from multiple disabilities, on or about January 6, 2015, Am. Compl. ¶ 42, and that she received a denial letter from the Disability Officer for the City of Chicago thereafter,[2] *id.* ¶ 51. Moreover, contrary to the City's suggestion, Curtis need not provide supporting documentation of her specific work limitations at the pleading stage. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2004) ("[E]vidence is not required at the pleading stage."); *cf. Heatherly v. Portillo's Hot Dogs, Inc.,* 958 F. Supp. 2d 913, 922 (N.D. Ill. 2013) (dismissing failure-to-accommodate claim at summary judgment for lack of evidence).

---

[2]     Although the City takes issue with Curtis's decision not to attach the alleged letter to her amended complaint, Mot. Dismiss at 10, such evidence is not required at the pleading stage. *See Carlson*, 758 F.3d at 827.

Finally, the City argues that any ADA claims accruing before March 12, 2014, should be dismissed as time-barred, but Curtis does not assert any ADA claims that accrued prior to that date. Curtis states that she notified the City of her disability and requested an accommodation on or about January 6, 2015, and that her request was denied sometime thereafter. Am. Compl. ¶ 42. The City also allegedly retaliated against Curtis (Count IV) after she filed the January 2015 charge with the EEOC. *Id.* ¶¶ 19, 52, 53. The City's motion to dismiss Count III is accordingly denied.

## IV.    Count IV: ADA Retaliation

To state an ADA retaliation claim, Curtis must plausibly allege that (1) she engaged in a protected activity under the ADA, and (2) she suffered an adverse employment action as a result of that activity. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) (stating that Title VII and ADA retaliation claims need only satisfy the pleading standards set forth in *Luevano*, 722 F.3d at 1028); *Sanders v. Ill. Dep't of Cent. Mgmt. Servs.*, 593 Fed Appx. 575, 577 (7th Cir. 2015) (same, for ADA retaliation claim). The City argues that Curtis's retaliation claim should be dismissed for failure to allege the dates these two elements occurred and because Curtis does not allege a causal link between the two elements. Mot. Dismiss at 11–12.

As to protected activity, Curtis states that she filed a complaint subsequent to her request for reasonable accommodation. Am. Compl. ¶ 52. Drawing all reasonable inferences in Curtis's favor, the "complaint" refers to Curtis's January 6,

2015 EEOC charge. *Id.* ¶ 18. As to adverse employment action, Curtis alleges specific adverse retaliatory actions by the City, including a failure to promote Curtis sometime between filing the EEOC charge and filing her second amended complaint—a period of approximately two years—that provides sufficient notice for the City to investigate the claims. Am. Compl. ¶ 52.

Finally, alleging a causal link is not required at the pleading stage. *See Tate*, 809 F.3d at 346; *Sanders*, 593 Fed Appx. at 577. The City's motion to dismiss Count IV is accordingly denied.

## V.     Count V: IHRA

The City argues that Curtis's IHRA claim should be dismissed on the same grounds it gives for dismissing her Title VII and ADA claims. Mot. Dismiss at 14–15. As the parties agree, the Seventh Circuit has held that discrimination and retaliation claims under the IHRA should be analyzed in the same way as ADA and Title VII claims. *See Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 659–60 (7th Cir. 2013) (ADA); *Bagwe v. Sedgwick Claims Mgmt. Servs. Inc.*, 811 F.3d 866, 879 n.39 (7th Cir. 2016) (Title VII).

Since Curtis has sufficiently alleged a Title VII discrimination claim and retaliation claim, as well as ADA discrimination and retaliation claims, Curtis has sufficiently stated an IHRA claim. The City's motion to dismiss Count V is therefore denied.

## Conclusion

For the reasons stated herein, Defendant's motion to dismiss [36] is denied.

**IT IS SO ORDERED.**          **ENTERED   3/14/18**

_____
**John Z. Lee**
**United States District Judge**